```
              IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *

FRALL DEVELOPERS, INC., et
al.,                              *

     Plaintiffs,                  *

v.                                *     CIVIL NO.: WDQ-06-1281

BOARD OF COUNTY COMMISSIONERS *
for FREDERICK COUNTY,
                                  *

     Defendant.                   *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

Frall Developers, Inc. ("Frall"), P.S.R.P., Inc. ("PSRP"), and Harvest Ridge Associates, LLC ("HRA"), have sued the Board of County Commissioners for Frederick County, Maryland (the "County").  Pending is the County's motion to dismiss the Plaintiffs' claims.  For the following reasons, the County's motion will be granted in part and denied in part.


I.  Background

Plaintiffs are developers of residential subdivisions in Mount Airy, Frederick County, Maryland.  Am. Compl. ¶¶ 1-3.  PSRP and HRA own real property in the Manorwood and Harvest Ridge subdivisions.  *Id*.  Frall is the direct predecessor in interest to PSRP's and HRA's holdings in those subdivisions.  *Id*. ¶¶ 20, 31.

In March 1995, Frall and two other developers entered into two public works agreements with the County. *Id.* ¶ 8. The March 9, 1995 "Public Works Agreement Water" (the "Water PWA") provided for the construction of water facilities for the Manorwood and Harbor Ridge housing developments. *Id.* ¶¶ 12-13, Ex. 1 (the Water PWA). The March 21, 1995 "Public Works Agreement Sewer" (the "Sewer PWA") provided for the construction of sewer facilities for the developments. *Id.* ¶¶ 12-13, Ex. 2 (the Sewer PWA).

In the PWAs, the developers agreed to fund water and sewer systems and to bear the County's costs related to the construction of the facilities. *Id.* ¶¶ 8, 12-14, Ex. 1 ¶¶ 2-3, Ex. 2 ¶¶ 2-3 . The County gained ownership of the systems once they were completed. *Id.* ¶¶ 12, 14, Ex. 1 ¶ 2, Ex. 2 ¶ 2. The County agreed to allocate 400 water and 400 sewer connections to the developers. *Id.* ¶ 15, Ex. 1 ¶ 10, Ex. 2 ¶ 10. The PWAs also provided the developers with a first option to purchase additional water and sewer connections from the County as they became available. *Id.* ¶¶ 17-18, Ex. 1 ¶ 11, Ex. 2 ¶ 11.

Under the PWAs the allocation of the initial 400 and any additional water or sewer taps from the systems is "subject to any requirement by the County for a public need or health emergency," and "the County [has] the right to take priority over the Developers as to any such . . . taps so required, in which

2

event the balance of . . . taps due the Developers shall be
provided immediately after they become available." *Id*. ¶ 30, Ex.
1 ¶ 13, Ex. 2 ¶ 13.

Frall alleges that it retained its rights under the PWAs to
taps in the Manorwood subdivision and was assigned such rights to
the Harvest Ridge water and sewer taps. *Id*. ¶¶ 20, 31.

On February 19, 2002, the County amended its Water and Sewer
Rules and Regulations (the "Regulation") to require "[t]he
Director of the Division of Utilities and Solid Waste Management
[to] reserve fifteen percent (15%) of the capacity of each water
and sewer system for public buildings and health hazard areas."
*Id*. ¶ 25 (*citing* Frederick County's Water and Sewer Rules and
Regulations, section X.A.3).

In August 2003, Frall and PSRP asked the Frederick County
Division of Utilities and Solid Waste Management ("DUSWM") to
determine if the systems would have sufficient capacity to serve
the remaining 13 unrecorded lots in Manorwood and 103 unrecorded
lots in Harvest Ridge. *Id*. ¶ 26. DUSWM determined that the
water system capacity was inadequate for the 116 additional lots,
and the sewer system would only be adequate for the 13 Manorwood
lots. *Id*. ¶ 27. Plaintiffs allege that DUSWM acted pursuant to
the regulation reserving 15 percent of the water and sewer
capacity for County government buildings in the service area.
*Id*.

Frall and PSRP objected to the 15 percent reservation and asked DUSWM to recalculate the capacity of the systems without it.  *Id*. ¶ 29.  Plaintiffs allege that the County asserted its entitlement to 15 percent of the capacity of the sewer system under the Sewer PWA, which subjects the allocation of sewer taps "to any requirement by the County for a public need or health emergency."  *Id*. ¶ 30, Ex. 1 ¶ 13.

On May 12, 2005, Frall and HRA filed a preliminary plan for the development of HRA's 103 lots in Harvest Ridge.  *Id*. ¶ 32.  Plaintiffs allege that on November 17, 2005, DUSWM informed them that there was insufficient water or sewer capacity to approve their preliminary plan because of the 15 percent of capacity that the County had reserved for itself.  *Id*.

Plaintiffs allege that thereafter the County conditioned approval of HRA's preliminary plan to develop its 103 lots on HRA's agreement to finance a more-than-$2-million expansion and improvement of the sewer and water systems.  *Id*. ¶¶ 33-34.  Plaintiffs also allege that the County has allocated to another development two of the taps reserved for the Plaintiffs under the PWAs.  *Id*. ¶ 35.

Plaintiffs allege that the County "has never identified what 'public need or health emergency' has necessitated its refusal to give [P]laintiffs access to the water and sewer taps they requested."  *Id*. ¶ 30.  Plaintiffs further allege that "there are

4

no government buildings in the water or sewer maps that show service areas for county municipal plants." *Id.* Plaintiffs contend that, without the reservation of 15 percent of capacity to the County, the sewer system could accommodate the Plaintiffs' remaining 116 lots. *Id.* ¶ 28. Plaintiffs also contend that, as of the date of their Amended Complaint, only 381 water and 379 sewer connections have been made available by the County, and neither PSRP nor HRA can record its remaining lots for development or sale until the required water and sewer taps are made available. *Id.* ¶¶ 16, 33.

Plaintiffs have sued for: 1) breach of contract (Count II); 2) impairment of contracts under Article I, Section 10, of the United States Constitution (Count IV); and 3) inverse condemnation under: a) the Fourteenth Amendment of the United States Constitution (Counts III and VI); and b) Article III, Section 40, of the Maryland Constitution and Article 24 of the Maryland Declaration of Rights (Counts V and VI).[1] *Id.* ¶¶ 42-

---

[1] The Court treats Plaintiffs' Count I, "Injunctive Relief," and Count VII, "Declaratory Relief" as potential remedies for the causes of action stated in Counts II-VI. Plaintiffs' Count IV, "Inverse Condemnation," is a claim for damages for a government taking when condemnation proceedings have not been instituted, and can rest on either state or federal constitutional grounds. *U. S. v. Clarke,* 445 U.S. 253, 257 (1980); *Reichs Ford Road Joint Venture v. State Roads Com'n of the State Highway Admin.*, 388 Md. 500, 511 (2005); *Duke Street Ltd. Partnership v. Board of County Com'rs of Calvert County,* 112 Md.App. 37, 49 (1996). Count III, "42 U.S.C. § 1983-Due Process Violation," and Count V, "Maryland Declaration of Rights," are the federal and state theories on which the Plaintiffs' inverse condemnation claim is based. *Duke*

89.

II. Analysis

The County has moved to dismiss, arguing that:

1) Plaintiffs' claims fail because their rights to water and sewer connections under the PWAs are subject to any requirement of the County for a public need or health emergency;

2) Plaintiffs fail to state a claim for breach of contract;

3) Plaintiffs' claims of impairment of contract and inverse condemnation fail because:

a) the refusal to allocate taps was pursuant to the contract and is not a condemnation;

b) the County did not deprive the Plaintiffs of all beneficial uses of—and therefore did not take—their property; and

c) the County's Regulation was neither arbitrary nor irrational and met due process requirements;

4) Plaintiffs fail to state a legal or factual basis for impairment of contract and inverse condemnation;

5) Plaintiffs' impairment-of-contracts and inverse-condemnation claims are barred by Plaintiffs' failure to provide timely notice under Maryland's Local

_____

*Street Ltd. Partnership,* 112 Md. App. at 47, 49.

Government Tort Claims Act ("LGTCA"),[2] and;

6) Plaintiffs' claims involve local government planning

decisions from which this Court should abstain.


A.   Failure to State a Claim upon which Relief Can be Granted

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)). The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id*.


1.  Breach of Contract

The County contends that the Plaintiffs' breach-of-contract

---

[2] Md. Code Ann., Cts. & Jud. Proc. §§ 5-301 to 5-304 (2006).

claim is without merit, because paragraph 13 in each PWA makes Plaintiffs' right to water and sewer connections "subject to any requirement by the County for a public need or health emergency." Am. Compl. Ex. 1 ¶ 13, Ex. 2 ¶ 13.

In Maryland, the interpretation of a contract, including whether it is ambiguous, is a question of law for the court. *Walton v. Mariner Health of Maryland, Inc.,* 391 Md. 643, 660 (2006). Under Maryland's objective theory of contract interpretation: "'when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.'" *Dennis v. Fire & Police Employees' Retirement System*, 390 Md. 639, 656-57 (2006) (*quoting General Motors Acceptance v. Daniels,* 303 Md. 254, 261 (1985)).

When a contractual duty is subject to an express condition precedent, "there can be no breach by nonperformance until the condition precedent is either performed or excused." *Laurel Race Course, Inc. v. Regal Const. Co., Inc.*, 274 Md. 142, 154 (1975), *cited with approval in Bi-Tech North, Inc. v. Lockheed Martin Corp.*, 129 F. App'x 9, 13 (4th Cir. 2005). A condition precedent is "a fact, other than mere lapse of time, which, unless excused,

must exist or occur before a duty of immediate performance of a promise arises." *Chirichella v. Erwin,* 270 Md. 178, 182 (1973). Phrases such as "'subject to' . . . are commonly used to indicate that performance of a duty has expressly been made conditional." *Id.*

Paragraph 13 of the PWAs makes the County's duty to provide water and sewer connections subject to the condition precedent of the County having *no* requirement for a public need or health emergency.  Thus, if "any requirement by the County for a public need or health emergency" exists, the County, according to the plain language of the PWAs, "shall have the right to take priority over the [Plaintiffs] as to any such [water or sewer] taps so required."  Am. Compl. Ex. 1 ¶ 13, Ex. 2 ¶ 13.  Whether any "requirement for a public need or health emergency" exists, and the number of "such taps so required" by the County for that requirement, are questions of fact.

Plaintiffs allege that the County has never identified a requirement for a public need or health emergency, independent of the County's Regulation, that requires the County to reserve 15 percent of the systems' capacity. *Id.* ¶ 30.  The County argues that it did not rely on the Regulation.  Reply 3-5.  Plaintiffs also allege that the County confirmed that the lack of allocable water or sewer taps is a result of the County's decision to reserve 15 percent of the systems' capacity. *Id.* ¶ 32.  If

9

Plaintiffs are correct that the County does not require a 15 percent reservation for a public need or health emergency, then the County has a contractual duty to provide the available connections.  Plaintiffs' allegations, treated as true and viewed in the most favorable light, state a claim for breach of contract.

2.  Impairment of Contracts

The County argues that Plaintiffs' claim of impairment of contracts fails because: 1) there was no change in the law that impaired a contractual obligation to the Plaintiffs; and 2) the Plaintiffs do not allege any specific facts to support their claim.

Article I, Section 10, of the U. S. Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  To state a claim for impairment of contract, a plaintiff must allege: 1) a contractual relationship; 2) a change in law impaired that contractual relationship; and 3) the impairment was substantial.  *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).

Plaintiffs allege the existence of a contractual relationship in the PWAs.  Am. Compl. ¶¶ 12–18, Ex. 1, Ex. 2. Plaintiffs also allege a change in the law, the County's Regulation, and claim that the law impaired the County's

obligation under the contract by causing the DUSWM to reserve 15 percent of the systems' capacity when no requirement for a public need or health emergency existed.  *Id*. ¶¶ 25, 27, 30, 64-65.

A distinction must be made between a change in law that impairs the state's obligation under a contract and one that merely causes a state to breach a contract.  *TM Park Ave. Associates v. Pataki*, 214 F.3d 344, 349 (2d Cir. 2000).  The distinction between impairment and breach depends on the availability of a remedy in damages.  *Id*.; *E & E Hauling, Inc. v. Forest Preserve Dist. of Du Page County, Ill.*, 613 F.2d 675, 679 (7th Cir, 1980) (*citing Hays v. Port of Seattle*, 251 U.S. 233, 237 (1920).  "If a contract is merely breached and the duty to pay damages remains, then the obligation of the contract remains and there has been no impairment."  *TM Park Ave. Associates,* 214 F.3d at 349; *accord Horwitz-Matthews, Inc*. v. City of Chicago, 78 F.3d 1248, 1250-51 (7th Cir. 1996); *Jackson Sawmill Co., Inc. v. U.S.*, 580 F.2d 302, 311-12 (8th Cir.1978); *University of Hawai'i Professional Assembly v. Cayetano,* 183 F.3d 1096, 1102-03 (9th Cir. 1999).

If, as alleged, there is no requirement for a public need or health hazard that necessitates the 15-percent reservation, then the County has merely breached its obligations under the PWAs, and the Plaintiffs' claim is for breach of contract, not impairment of contract.  If the Plaintiffs' breach of contract

claim is successful, the County would have an obligation under the PWAs to pay damages, and there would be no impairment. Accordingly, Plaintiffs' claim for impairment of contracts will be dismissed.

3.  Inverse Condemnation

Plaintiff's claim for inverse condemnation (Count VI) is based on alleged violations of due process under the Fourteenth Amendment to the U.S. Constitution[3] (Count III), and Article III, Section 40, of the Maryland Constitution[4] and Article 24 of the Maryland Declaration of Rights[5] (Count V).  In all three counts, Plaintiffs contend that the County has "appropriated [Plaintiffs'] contract rights under the Water and Sewer PWAs," "appropriated the Water and Sewer Systems and their capacities without compensation," and made "demands that [P]laintiffs make additional improvements to the systems before [P]laintiffs' needs

---

[3] The Fourteenth Amendment provides: "No State shall . . . deprive any person of . . . property, without due process of law."

[4] Article III, Section 40, of the Maryland Constitution reads, as follows: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

[5] Article 24 of the Maryland Declaration of Rights provides: "That no man ought to be . . . deprived of his . . . property, but by the judgment of his peers, or by the Law of the land."

will be considered."  Am. Compl. ¶¶ 54-57, 70-73, 80-84.

The County counters that: 1) its refusal to allocate taps was done by contractual right and is, therefore, not a condemnation; 2) the County's actions did not deprive Plaintiffs of all beneficial uses of their property, and therefore were not a taking; 3) the County's enactment of the Regulation was not arbitrary or irrational and was supported by due process; and, 4) the Plaintiffs fail to state a legal or factual basis for their claim.

The Maryland Court of Appeals has held that the provisions of the Fourteenth Amendment of the U.S. Constitution, and those of Article III, Section 40, of the Maryland Constitution and Article 24 of the Maryland Declaration of Rights, have the same meaning and effect in reference to an exaction of property. *Bureau of Mines of Maryland v. George's Creek Coal & Land Co.*, 272 Md. 143, 156 (1974) (*citing Allied American Co. v. Comm'r*, 219 Md. 607, 615-16 (1959)).[6]  The decisions of the Supreme Court on the Fourteenth Amendment are "practically direct authorities," and although there is no requirement that the due process provisions be interpreted or applied in the same manner, interpretations of the Fourteenth Amendment are persuasive authority in cases applying Article 24 and Article III, Section

---

[6] *Bureau of Mines of Maryland* and *Allied American Co.* refer to Article 23, which was re-enacted as the current Article 24 by Chapter 681 of the Acts of 1977, ratified November 7, 1978.

13

40.  *Id.   Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 623 (2002).


i.  Plaintiffs' Property Interests under the PWAs

"[T]o determine whether due process requirements apply in the first place, we must look . . . to the nature of the interest at stake . . . to see if the interest is within the Fourteenth Amendment's protection of . . . property. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570-71 (1972); *Gardner v. Baltimore Mayor and City Council,* 969 F.2d 63, 68 (4th Cir. 1992). "If there is no cognizable property interest, there is no need to reach the question of whether a purported deprivation was arbitrary or capricious." *Gardner*, 969 F.2d at 68.   Property interests, rather than arising from constitutional provisions, are created and "defined by existing rules or understandings that stem from an independent source." *Roth,* 408 U.S. at 577. Contract rights may be property interests subject to a state's power of eminent domain.  *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 19 n.16 (1977).

A mere breach of contract, however, "'is not a deprivation of property without *constitutional* due process of law. . . . Otherwise, virtually every controversy involving an alleged breach of contract by a government . . . would be a constitutional case.'" *Coastland Corp. v. County of Currituck*,

14

734 F.2d 175, 178 (4th Cir. 1984) (*quoting Medina Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir. 1981)).  In *Coastland Corp.*, the Fourth Circuit stated that even if the plaintiff did have a property interest created by a contract with the county government, "there would be no process due since a suit for breach of contract would have provided [the plaintiff] with an adequate remedy in state law." *Coastland Corp.*, 734 F.2d at 178.

The Plaintiffs have a right, absent a public need or health emergency, to performance under the PWAs or contract damages under state law.  So long as the County has not, under the color of law, denied Plaintiffs' right to damages for breach of contract, the County has not deprived them of any property interest under the PWAs.

The Amended Complaint does not state a claim for any property interest in the water or sewer systems themselves or in the systems' capacity beyond what was bargained for in the PWAs. Plaintiffs' property interests in capacity of the systems were created and defined by the PWAs.  Plaintiffs' Amended Complaint states that, under the PWAs, the County would own the systems after the developers constructed the facilities at their own expense.  Am. Compl. ¶ 12-14, Ex. 1 ¶ 2, Ex. 2 ¶ 2 ("the County shall own and operate the System[s]").  Neither the Amended Complaint nor the PWAs state a property interest in the systems' capacity beyond that bargained for in the PWAs.

ii.   The County's Conditions on Permit Approval

Plaintiffs' claim that the County's "demands that [P]laintiffs make additional improvements to the systems before [P]laintiffs' needs will be considered" are a regulatory taking, and require a separate legal analysis than that for their claims regarding a property interest in contract rights, the systems' capacity, or in the systems themselves.  *Id.* ¶ 57, 73, 83.

The Takings Clause of the Fifth Amendment of the U.S. Constitution, made applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897), provides that "private property [shall not] be taken for public use, without just compensation."  A regulatory action that "completely deprive[s] an owner of 'all economically beneficial us[e]' of her property" will generally be deemed a *per se* taking for Fifth Amendment Purposes, and will require just compensation from the government.  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (*quoting Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)).

In the special context of land-use exactions, the Supreme Court has applied a "roughly proportional" test to determine whether: 1) "an 'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the [government;]" and 2) the government's condition is sufficiently

16

"related both in nature and extent to the impact of the proposed development" to satisfy the Takings Clause. *Dolan v. City of Tigard*, 512 U.S. 374, 386, 391 (1994) (*quoting Nollan v. California Coastal Comm'n,* 483 U.S. 825, 837 (1987)). More recently, though, the Court has limited the application of the test for land-use exactions: "[W]e have not extended the rough-proportionality test of *Dolan* beyond the special context of exactions–land-use decisions conditioning approval of development on the *dedication of property* to public use." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 702 (1999) (emphasis added).

Here, Plaintiffs allege that the County is demanding that HRA finance over $2 million in improvements to the water and sewer systems before it approves a preliminary plan for the development of HRA's 103 units. Am. Compl. ¶¶ 32–34. As the County's demand is not for a dedication of property, the Court does not apply the rough-proportionality test of *Dolan*. Instead, the Court uses the "regulatory takings" analysis provided in *Lucas*, and looks to whether the Plaintiffs have sufficiently alleged that the County's action has deprived them of all economically beneficial use of their undeveloped property. This they have done. Am. Compl. ¶¶ 58, 74, 84.

Though Plaintiffs' alleged deprivation of property interests in the PWAs, the capacity of the systems, and in the water and

17

sewer systems themselves do not support their inverse
condemnation claim, the alleged regulatory taking by the County
of all economically beneficial use of their property by its
conditions on permit approval is sufficient for the claim to
survive a motion to dismiss under Rule 12(b)(6).  Accordingly,
the Plaintiffs have stated a claim for inverse condemnation under
the Fourteenth Amendment of the U.S. Constitution, and under
Article III, Section 40, of the Maryland Constitution and Article
24 of the Maryland Declaration of Rights.


B.  LGTCA as a Procedural Bar to Constitutional Tort Claims

     The County argues that Plaintiffs' constitutional tort
claims are barred by sovereign immunity, because Plaintiffs
failed to provide the timely written notice required by the LGTCA
to permit a suit on such grounds against the County.

     Maryland's LGTCA makes local governments, including boards
of county commissioners, "liable for judgments for damages
awarded against their officers and employees for tortious acts
committed within the scope of employment and without malice."
Md. Code Ann., Cts. & Jud. Proc. §§ 5-301 to 5-303 (2006); *Ashton
v. Brown*, 339 Md. 70, 107 (1995).  The LGTCA also has a notice
requirement, which provides that: "an action for unliquidated
damages may not be brought *against a local government* or its
employees unless the notice of the claim required by this section

18

is given within 180 days after the injury." § 5-304(b) (emphasis added). "[T]he LGTCA applie[s] to all torts without distinction, including . . . constitutional torts.'" *Martino v. Bell*, 40 F. Supp. 2d 719, 723 (D. Md. 1999) (*quoting Thomas v. City of Annapolis*, 113 Md. App. 440, 457 (Md. Ct. Spec. App. 1997)); *Ashton*, 339 Md at 108 n.19.

As the Plaintiffs failed to allege facts sufficient to support a legal claim for impairment of contract, the LGCTA analysis is limited to the Plaintiffs' inverse condemnation claim. As stated above, the Plaintiffs' inverse condemnation claim survives scrutiny under Rule 12(b)(6) because they have sufficiently alleged facts that, taken to be true, would support such a claim based on a regulatory taking. The Plaintiffs' Amended Complaint alleges that the County's demand that HRA finance the system improvements occurred some time during or after Frall and HRA's meeting with DUSWM on November 17, 2005. Am. Compl. ¶¶ 32-33. The County argues that it did not receive written notice pursuant to LGTCA § 5-304 until March 23, 2006, as alleged in the Amended Complaint. *Id*. ¶ 5. Thus, the Plaintiffs constitutional tort claim for inverse condemnation, based on the conduct of November 17, 2005, is not barred by the notice requirement of the LGTCA.

C.  Abstention from Local Government Planning Decisions

Finally, the County argues that this Court should dismiss the Plaintiffs' claims because the Court should abstain from "local government decisions," citing the Fourth Circuit's opinion in *Gardner v. Baltimore Mayor and City Council,* 969 F.2d 63, 67-69 (4th Cir. 1992).

In *Gardner*, the Fourth Circuit held that a land developer did not have a property interest in a public works agreement with the city protected by the Due Process Clause of the Fourteenth Amendment, because the state and municipal law gave the city discretion to refuse to issue a public works agreement to the developer.  *Id*. at 69.  "Any significant discretion conferred upon the local agency defeats the claim of a property interest." *Id*. at 68.

The developer's claim in *Gardner* was for a due-process violation based on the city's alleged refusal to grant the developer a public works agreement for the development of a subdivision.  *Id*. at 65-66.  Here, the Plaintiffs have not adequately alleged a claim to a protected property interest in any public works agreement with the County.  The Plaintiffs' due-process-related claim has only been sufficiently alleged on the basis of a regulatory taking.  The Plaintiffs have also alleged facts sufficient to support a claim for breach of contract.  The claims in this case then, are not limited to "local land-use

disputes," involving decisions on subdivision regulations and zoning ordinances, which the Fourth Circuit has stated are "simply not the business of the federal courts." *Id*. at 67-68. Accordingly, *Gardner* does not apply to the Plaintiffs' claim for breach of contract, or to the Plaintiffs' particular inverse-condemnation claim.


III.  Conclusion

For the reasons stated above, the County's motion to dismiss will be granted as to the Plaintiffs' claim for impairment of contract (Count IV), but denied as to the Plaintiffs' remaining claims for breach of contract and inverse condemnation (Counts I-III, V-VII).


September 7, 2006                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge

21